**SO ORDERED.**

**SIGNED January 31, 2008.**



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

IN RE:

PETER RAYMOND LAFURIA, M.D.           CASE NO. 07-20346

    DEBTOR

                                           CHAPTER 11

**********************************************************************

### FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO CONFIRMATION OF THE CHAPTER 11 PLAN OF REORGANIZATION FOR PETER RAYMOND LAFURIA, M.D.

This matter comes before the Court on the uncontested confirmation of the Debtor in Possession's Chapter 11 Plan of Reorganization Dated October 19, 2007 ("Plan")[1], as immaterially modified thereafter, filed by Peter Raymond LaFuria, M.D. ("Debtor", "Dr. LaFuria" or "Proponent"). The Court has considered the evidence presented at the confirmation hearing held on January 24, 2008. The Court has taken judicial notice of the docket of this case and after due deliberations had, the Court hereby makes the following Findings of Fact and draws the following Conclusions of Law under Fed. R. Civ. P. 52, made applicable to this chapter 11 case by Bankruptcy Rules 9014 and 7052[2]:

---

[1] All capitalized terms not otherwise defined herein shall the meaning ascribed to such terms in the Plan.

[2] Despite any headings, all findings of fact are construed as conclusions of law and all conclusions of law are construed as findings of fact to the extent applicable.

## RECITALS

### *Background*

1. Dr. LaFuria was a practicing physician in Lake Charles for almost 30 years. His specialty was in the areas of Obstetrics and Gynecology. During that time, he was married to Mrs. LaFuria and the couple maintained a community property regime, at least until Mrs. LaFuria filed a petition for divorce shortly before the bankruptcy was filed. Mrs. LaFuria takes the position that the community property regime ended prior to the date the petition for relief was filed in this case because she filed a petition for divorce prior to the petition for relief and the divorce was subsequently granted.

2. Shortly before the filing of this voluntary chapter 11 plan, Dr. LaFuria was sued in eight separate State Court lawsuits filed by several of his former patients, all seeking some form of injunction preventing the disposal of assets and monetary damages for alleged negligent and/or intentional conduct in connection with the doctor-patient relationship, and more specifically, the taking of unauthorized photographs during physical examinations.

3. In one of the eight pre-petition lawsuits filed in the 14th Judicial District Court, Parish of Calcasieu, the State Court froze all of Dr. LaFuria's and Mrs. LaFuria's community assets pursuant to a temporary restraining order ("TRO").

4. In addition to the eight lawsuits, several former patients instituted administrative proceedings before the Louisiana Patient Compensation Fund. Also prior to the filing of the bankruptcy, Mrs. LaFuria filed a petition for divorce and for division of the community property.

5. Additionally, Dr. LaFuria was arrested on criminal charges apparently arising out of these same allegations made in a civil context.

2

6. Dr. LaFuria voluntarily surrendered his license to practice medicine.

*The Bankruptcy*

7. Dr. LaFuria voluntarily filed Chapter 11 proceedings on May 25, 2007, (the "Filing Date") in the United States Bankruptcy Court for the Western District of Louisiana, Lake Charles Division. (P-1). The aforementioned lawsuits were promptly removed to federal court and ultimately consolidated before Judge Tucker Melancon, United States District Court, Western Division of Louisiana.

8. The bankruptcy was filed in large part to dissolve (or render moot) the TRO and to attempt to address this anticipated mass tort litigation in an orderly, efficient manner in one forum.

9. The Debtor retained Michael A. Crawford and the law firm of Taylor, Porter, Brooks & Phillips, L.L.P. as his bankruptcy counsel, with the application approved by Order dated June 8, 2007, *nunc pro tunc* to May 25, 2007. (P-45)

10. On or about June 28, 2007, the Official Committee of Tort Claimants ("Committee") was formed by the United States Trustee. The Committee engaged William Steffes, Art Vingiello and the firm of Steffes, Vingiello & McKenzie as counsel and that application was approved by Order dated July 10, 2007. (P-111).

11. Almost immediately after the filing of the chapter 11, the Debtor's wife, Mrs. LaFuria, filed an adversary proceeding (P-10) seeking, among other things, declaratory relief with respect to the issue as to whether the Debtor's former patients' claims could be satisfied from her one-half interest in the community assets. Mrs. LaFuria also sought interim relief to utilize arguable estate assets to pay the ordinary and necessary expenses of maintaining the two

3

households. The Committee intervened in that adversary proceeding (Adv. No. 07-2009). The bankruptcy court, considering the stipulations of counsel for the Committee, Mrs. LaFuria, and the debtor, entered an order allowing Mrs. LaFuria a living allowance. The order granting that relief authorized Mrs. LaFuria to compensate her counsel monthly under the guidelines set forth therein.

12. By Order dated July 18, 2007, the Court approved the retention of Merrick J. "Rick" Norman as special counsel for the Debtor in connection with the Tort Litigation. (P-124).

13. By Order dated August 10, 2007, the Court approved the retention of James F. Stulb and Stulb & Associates as accountants for the Committee. (P-150).

14. By Order dated October 11, 2007, the Court approved the retention of Gragson, Casiday & Guillory, L.L.P. as accountants for the Debtor. (P-234).

15. After an extension was granted, the Debtor filed with the Clerk of the Court the Statement of Financial Affairs, Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases and Lists of Equity Security Holders on June 26, 2007 (as amended from time to time, the "Schedules"). (P-77-88).

## *The Settlement*

16. Shortly after the bankruptcy was filed, counsel for the Debtor, Mrs. LaFuria, some of the former patients and the Committee made efforts to settle the cases. From that first meeting in early June, a flurry of negotiations over more than three months culminated with the execution of a Settlement Agreement and Memorandum of Understanding ("Settlement Agreement"), which was attached to the Debtor's Disclosure Statement and formed the foundation for the Plan.

17. The Settlement Agreement, in its most simple terms, provides for the resolution of all tort litigation (except with respect to various insurance issues) and the declaratory judgment adversary proceeding. Specifically, in exchange for his general discharge of all debts and a complete release of liability, the Debtor agrees to fund the settlement in an amount equal to 100% of his undivided one-half interest in the net, non-exempt community assets and assign all rights with respect to insurance coverage and claims. Mrs. LaFuria is responsible for half the administrative expenses in the bankruptcy and is entitled to receive her undivided one-half interest in the net, non-exempt community assets and in the exempt assets. The parties to the tentative settlement recognized the need for due diligence discovery by the Committee and counsel for the former patients in order to confirm the assets and values as represented in the Debtor's Schedules. Accordingly, the Settlement Agreement initially left blank Dr. LaFuria's funding obligation, contemplating therein that either a range or a fixed obligation would be inserted following the due diligence and, if necessary, contested litigation over the extent and validity of claimed exemptions.

18. Further, once the tentative agreement was reached, the parties developed and implemented a mechanism for certifying a class for settlement purposes only in State Court. The class was preliminarily certified and members of the class were given until November 24, 2007 to object to the settlement or opt out of the class. November 24 was also the last day to submit a proof of claim. The State Court approved a long-form notice to be mailed to the confidential patient list. That mail out occurred on October 19, 2007. (P-257). The State Court also approved a short-form notice to be published in three newspapers, namely the American Press

(Lake Charles), the Advertiser (Lafayette) and the Beaumont Enterprise. The short-form noticewas published twice in October.

## *Implementation of the Settlement*

19. The bar date to file proofs of claim and to challenge the Debtor's discharge or the dischargeability of a debt was established as October 12, 2007 by Order dated September 14, 2007. (P-206).

20. On September 12, 2007, the Debtor filed a Rule 9019 Motion for Authority to Compromise and Settle Claims (P-195) and the matter was set for hearing on October 11, 2007. At that point, the actual dollar amount of the settlement was left blank on account of the due diligence contemplated and the reservation of rights by the Committee to investigate and potentially challenge claimed exemptions. The motion was granted by Order dated October 12, 2007. (P-239).

21. Dr. LaFuria filed a plan of reorganization in the above-captioned bankruptcy case (the "Debtor's Plan") on October 19, 2007 (P-250).

22. Debtor also filed his Disclosure Statement on October 19, 2007 (P-249), and the adequacy of the Disclosure Statement, as amended, was approved by Order dated November 19, 2007 (P-290).

23. By agreement, the deadline for the Committee to object to claimed exemptions was extended twice, the latest extension through December 7, 2007. The Committee filed an objection to certain exemptions on December 7, 2007 (P-300) and Mrs. LaFuria and the Debtor filed separate responses. The hearing was scheduled for January 24, 2008. (P-302).

24. The Settlement Agreement was amended in early December 2007 to include a range of potential amounts for the Settlement Fund in Section 5.1 of the Plan. Specifically, the Debtor would fund the settlement with at least $3 million but no more than $4 million.

25. Approximately 600 former patients took the necessary steps to qualify for a payment under the procedures established by the State Court and the Special Master. No former patients opted out or filed an objection to the settlement by the November 24, 2007 deadline.

26. The State Court approved the settlement at the final fairness hearing on December 14, 2007. A judgment was entered by the State Court on January 15, 2008. (See Exhibit 2 to Debtor's Exhibit H, confirmation hearing exhibits).

*Confirmation*

27. On November 19, 2007, a confirmation procedures order was entered (P-289), which, among other things, established criteria for voting, the form of notices and the content of the solicitation packages to be sent to creditors entitled to vote on the Plan.

28. On November 30, 2007, the Debtor filed a Notice of Hearing to Consider Confirmation of the Chapter 11 Plan of Reorganization (P-297). Among other things, the Notice provided for a January 15, 2008 deadline within which to object to the Plan and to submit a ballot accepting or rejecting the Plan and set confirmation for January 24, 2008.

29. As evidenced by a series of certificates of service all filed on December 14, 2007, the Notice of Hearing, confirmation procedures order and amended disclosure statement were mailed to Class 6, Class 2, Class 4 and the service list. (P-303 through 306). Additionally, Class 2 and Class 6 received Court-approved ballots and Class 4 received a Court-approved Notification of Non-Voting Status.

7

442303
442303.1
07-20346 - #335  File 01/31/08  Enter 02/01/08 10:11:11  Main Document  Pg 7 of 15

30. Moreover, as evidenced by the Notice of Publication filed on January 22, 2008 (P-324), a Court-approved publication notice appeared in the Lake Charles, Lafayette and Beaumont newspapers between December 7 and 11, 2007.

31. The only class of <u>claims</u> entitled to vote was Class 2. Specifically, any member of the class (i.e., former patients) who did not timely "opt out" pursuant to the terms and conditions established by the State Court was classified under the Plan as a Class 2 creditor, entitled to receive a share of the settlement fund in accordance with the terms and procedures approved by the State Court upon the recommendation of the Special Master.

32. Since these creditors all hold unliquidated claims of unknown amounts, the Debtor filed a Motion to Temporarily Allow Claims for Voting Purposes. (P-251). The Court entered an Order temporarily allowing these claims for voting purposes at $1 each. (P-288).

33. As evidenced by the Affidavit of Michael A. Crawford filed on January 16, 2008 (P-320), 343 valid Class 2 ballots were received by the balloting agent (Crawford), 342 of which accepted the plan (99.7%). Accordingly, Class 2 is an accepting impaired class. Due to confidentiality concerns, the ballots were filed under seal. (P-323).

34. Any member of the class action who elected to "opt out" of the class action <u>and</u> had timely filed a proof of claim in the Bankruptcy Case was classified in Class 3. Since no one opted out, there are no members of Class 3, as evidenced by the Crawford Affidavit (P-320).

35. The disputed unsecured claim of Roger Yokubaitis is classified in Class 4. The claim is based on legal services provided to either the Debtor or Mrs. LaFuria prior to the filing of the bankruptcy. The Plan will pay nothing to this Class. Class 4 is impaired but did not have

8

the right to vote to accept or reject the Plan, as this class is presumptively deemed to have rejected the plan. Mr. Yokubaitis did not object to the plan. (P-320).

36. Class 5 is comprised of two potential kinds of subordinated creditors – (a) class members (*i.e.*, former patients of the debtor) who timely opted out of the State Court Class Action but did not file a proof of claim or challenge the dischargeability of their debts by the bar date of October 12, 2007 and (b) any other creditors (*i.e.*, non patients) who failed to timely file a proof of claim. These subordinated claims will receive nothing under the Plan. Since no one opted out of the State Court Class Action and no "other creditors" have filed a proof of claim, it appears as if there will be no members of Class 5. (P-320). The one known potential creditor for Class 5, Andrew Shebay, III, was provided a copy of the Notice of Hearing, confirmation procedures order, amended disclosure statement, and Notification of Non-Voting Status. (P-320). In any event, this class of claims is impaired but did not have the right to vote to accept or reject the Plan, as this class is presumptively deemed to have rejected the plan.

37. Following the Committee's objection to certain exemptions, most notably involving the Debtor's and Mrs. LaFuria's combined interests in individual retirement accounts, the parties conducted additional discovery and settlement negotiations in an effort to see if the $3-4 million range contained in the revised Settlement Agreement could be replaced with a fixed funding obligation. Those efforts ultimately led to a resolution whereby Dr. LaFuria agreed to fund $3,450,000 in exchange for withdrawal of the Committee's exemption objection. Among other things, this agreed-upon funding obligation includes the value of certain gifts to the LaFurias' children deemed to be preferential by the Committee and unused retainers held by attorneys for the Debtor. The division of the former community assets deemed exempt in the

bankruptcy, including but not limited to the proportionate shares of certain retirement accounts, is reserved and not treated specifically in the settlement or the Plan, it being the intention of Dr. and Mrs. LaFuria to enter into a community property settlement in their divorce proceeding post-confirmation in which Dr. LaFuria and Mrs. LaFuria will receive their respective interests, subject to any credits either spouse may be entitled to under applicable non-bankruptcy law. Following resolution of the exemption issues, the Settlement Agreement was amended accordingly. See Exhibit 1 to Exhibit H, confirmation hearing exhibits (P-334).

38. No objections to confirmation were filed by the January 15, 2008 deadline. See Joint Stipulation of Facts in Support of Confirmation, No. 5. (P-328).

39. Three separate motions to immaterially modify the plan were filed (P-309, P-319, and P-329). The "clean" version of the Plan, as immaterially modified, was filed on January 25, 2008. (P-332). It is this version of the Plan that the Debtor seeks to confirm.

40. The Debtor filed a Declaration in support of confirmation (P-326). As evidenced by the Joint Stipulation, paragraph 1, neither the Committee nor Mrs. LaFuria wished to cross examine the Debtor in connection with his Declaration. Among other things, the Declaration states: (a) the agreement was reached in good faith and as a result of arms-length negotiations; (b) the financial status of the Debtor has been accurately represented to the Court; (c) the plan was proposed in good faith; (d) the Debtor has no domestic support obligation; (e) the Debtor believes that confirmation will not be followed by liquidation or the need further financial reorganization; and (f) the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

NOW THEREFORE, this Court makes the following findings of fact and draws the following conclusions of law:

## GENERAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The United States Bankruptcy Court for the Western District of Louisiana has jurisdiction to conduct the confirmation hearing and to confirm the Plan pursuant to 28 U.S.C. §§ 1334(a), and to enter the above Findings of Fact pursuant to 28 U.S.C. § 157(b).

2. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3. As of the Filing Date, the Debtor was a resident and domiciliary of Calcasieu Parish, State of Louisiana. Accordingly, venue in this judicial district is proper pursuant to 28 U.S.C. § 1408(1).

4. The solicitation of votes was made in good faith and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the voting procedures pre-approved by this Court. Such transmittal and service was adequate and sufficient. The results of voting by Class 2 and Class 6, the only two classes eligible to vote, are found by this Court to be valid and accurate in all respects.

5. The Plan complies with all the mandatory requirements set forth in 11 U.S.C. § 1123(a).

6. Pursuant to the express terms of the Plan, all allowed administrative expense claims and all allowed priority claims are to be paid in full and in accordance with 11 U.S.C. § 1129(a).

7. All provisions in the Plan are consistent with the Bankruptcy Code and applicable non-bankruptcy law.

11

442303
442303.1
07-20346 - #335  File 01/31/08  Enter 02/01/08 10:11:11  Main Document  Pg 11 of 15

8. The Debtor, as proponent of the Plan, has met his burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence as further found and determined herein. The testimony, in the form of the consensually-introduced Declaration of the Debtor and the Joint Stipulation of Facts submitted by the Debtor, the Committee, and Mrs. LaFuria, indicates that, consistent with the requirements of 11 U.S.C. §§ 1129(a)(2) and (a)(3), the Debtor has complied with all provisions of the Bankruptcy Code and that the Debtor has proposed the Plan in good faith and not by any means forbidden by law. The Settlement Agreement, negotiated by and between counsel for the Debtor, Mrs. LaFuria, certain former patients, and the Committee, was entered into in good faith and at arms' length.

9. All payments under the Plan that are required to be approved by the Court under section 1129(a)(4) have been either approved by the Court or are subject to approval of the Court.

10. The "best interest" test of 11 U.S.C. § 1129(a)(7)(ii) requires the Court to find that each creditor that has not accepted (or deemed to have accepted) the Plan will receive or retain value under the Plan equal to or greater than what the holder would receive in a liquidation under chapter 7 of the Bankruptcy Code. Consistent with the liquidation analysis provided in the Debtor's approved Disclosure Statement, the Court finds that the additional administrative expenses associated with conversion to chapter 7 and the appointment of a trustee, together with the likelihood that the settlement would not have been confected otherwise, would result in the Class 3 (no members), 4 (one member) and 5 (no members) creditors receiving less in a chapter 7 proceeding. The Plan therefore provides these classes, which are presumed to have rejected the Plan, with more than each would receive in a chapter 7 proceeding.

12

442303
442303.1
07-20346 - #335  File 01/31/08  Enter 02/01/08 10:11:11  Main Document  Pg 12 of 15

11. Class 1 is unimpaired, did not vote and is deemed to have conclusively accepted the Plan.

12. The Court finds that Class 2, an impaired class of non-insiders, voted in favor of the Plan, and therefore the Plan satisfies 11 U.S.C. § 1129(a)(10).

13. The holders of Class 3, 4, and 5 Claims are deemed to reject, although as referenced above, only the sole member of Class 4 actually exists. As a result of actions not taken in either the State Court Class Action proceeding or with respect to the bar dates established by this Court, the presumed rejections by Classes 3 and 5 have been rendered moot.

14. The holder of the Class 6 interest, consisting of the community property claims of the Debtor's ex-wife Mrs. LaFuria, accepted the Plan.

15. Based on the record of the hearing, all of the pleadings and papers filed with the Court with respect to the Debtor's case and the evidence adduced at the hearing, specifically Exhibits A-K introduced without opposition (P-334), the Court finds that the Plan may be confirmed on a "cramdown" basis over the presumed dissent of Class 4 because the Plan does not unfairly discriminate against Class 4 and is fair and equitable. By way of example, the Court finds that Dr. LaFuria will not retain property exceeding his one-half interest in exempt assets and thus his junior claim or interest to estate property will not receive anything under the Plan. Likewise, Mrs. LaFuria is not receiving more than her one-half interest in community assets, and thus, the Plan does not violate the absolute priority rule.

16. There will be no need for further reorganization or liquidation and, thus, the Plan is feasible as required by 11 U.S.C. § 1129(a)(11).

442303
442303.1

17. Section 1129(a)(13) of the Bankruptcy Code, which governs retiree benefits, is not applicable as there are no retiree benefits the Debtor is obligated to pay.

18. No governmental agency has requested denial of confirmation under 11 U.S.C. § 1129(d).

19. As set out in Section 7.1 of the Plan, the Debtor does not have any executory contracts or unexpired leases.

20. Consistent with 11 U.S.C. § 1141(d)(5) and the express language of Section 8.8 of the Plan, the Debtor shall receive his discharge only upon submission of (a) the Notice of Occurrence of Effective Date, which necessarily means all play payments have been made, and (b) a proposed *ex parte* Order granting Debtor his discharge.

21. Upon the Effective Date, and subject to the exceptions set forth in Section 7 of the Settlement Agreement, the Debtor, his medical corporation, Mrs. LaFuria, OB-GYN Associates, L.L.C., and their heirs, legatees, successors, employees, assigns, and attorneys shall receive a general and absolute release. The Court finds that the settlements, compromises, releases, discharge, exculpations and injunctions set forth in the Plan are an integral part of the Plan, and are necessary to the proposed reorganization of the Debtor and the successful administration of this estate. The release, injunction and exculpation provisions of the Plan and the Settlement Agreement upon which the Plan is principally based are material terms of the Plan and Settlement Agreement, the modification or elimination of which would require re-solicitation thereof, thereby placing at risk the confirmation and consummation of the Plan. The failure to effect the release, injunction and exculpation provisions of the Plan would seriously impair the Debtor's ability to confirm the Plan. The Released Parties have provided good and valuable

consideration for the releases and exculpations they are receiving pursuant to the Plan. Pursuant to 11 U.S.C. § 1123(b) and Bankruptcy Rule 9019(a), the releases and injunctions set forth in the Plan, including, without limitation, releases and injunctions set forth in Sections 8.2, 8.3, 8.4, 8.5, 8.7 of the Plan are fair, equitable, reasonable, in good faith, and are in the best interests of the Debtor and holders of Claims and Interests.

22. The Court finds that Section 11.1 of the Plan, which sets forth the conditions to entry of a confirmation order, has been complied with.

23. Pursuant to 11 U.S.C. §§ 105(a) and 1142, and notwithstanding the entry of these Findings of Fact or the Confirmation Order, or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or in the Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law and shall also have exclusive jurisdiction over the matters set forth in Article XIII of the Plan.

###

These Findings of Fact and Conclusions of Law were prepared and are being submitted by:

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.
Michael A. Crawford, #22315
Post Office Box 2471
451 Florida Street, 8th Floor (70801)
Baton Rouge, Louisiana 70821-2471
(225) 387-3331 Tel.
(225) 346-8049 Fax
*Attorneys for Debtor in Possession*